**Donald Paul MAURO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–05–345 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Dec. 21, 2006.

Decided April 18, 2007.

Joseph J. Finkel, Law Office of Joseph J. Finkel, Houston, for appellant.

Michael A. McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The State indicted Donald Paul Mauro on nineteen counts for sexual offenses that he allegedly committed between September and November of 2004. In June 2005, the State dismissed one count, and a jury convicted Mauro on the remaining eighteen counts. The jury assessed Mauro's punishment on each count as follows:

- count one—two years' imprisonment and community supervision;
- count two—five years' imprisonment;
- count three—ten years' imprisonment;
- count four and count nineteen—twenty years' imprisonment on each;
- counts five through thirteen—five years' imprisonment and community supervision on each respective count; and
- counts fifteen through eighteen—fourteen and one-half years' imprisonment on each respective count.

Subsequently, the State recommended that the trial court stack Mauro's sentences so that he would serve a total of seventy-three years in prison. In response, Mauro argued that punishing him under both counts three and four would violate his constitutional rights by subjecting him to multiple punishments for the "same" conduct. He made a similar double jeopardy argument about counts eighteen and nineteen. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 14.

The trial court cumulated Mauro's sentences to require that he serve forty-four years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ), with credit for time served. Because the trial court accepted Mauro's double jeopardy argument, the court requested the State to recommend whether the court should base Mauro's sentence on either count three or count four, and either on count eighteen or count nineteen. The State objected to the trial court's request that it make an election in favor of two of these four counts and thereby eliminate Mauro's punishment on the remaining two. However, subject to its objection, the State advised the court that it would abandon count four and count nineteen.

With respect to the stacked convictions, the trial court ordered Mauro to serve his sentences as follows:

- on counts seventeen and eighteen—fourteen and one-half years' confinement on each count, with these sentences to be served first and concurrently;
- on counts fifteen and sixteen—fourteen and one-half years on each count, with Mauro to begin serving his sentences on these counts immediately after finishing his sentences for counts seventeen and eighteen;
- on count three—ten years upon completion of his sentence on counts fifteen and sixteen;
- on count two—five years upon completion of his sentence on count three;
- on count one and counts five through thirteen—ten years of community supervision following the completion of his confinement.[1]

Both Mauro and the State appeal from the trial court's judgment. In his first issue, Mauro challenges the legal and factual sufficiency of the evidence to support his conviction under count two, which charged him with indecency with a child by causing her to expose her genitals. In issues two and three, Mauro complains about the trial court's abandoning count four and count nineteen, and instead basing his sentence on counts three and eighteen. Finally, Mauro complains in issues four and five that the TDCJ erroneously interpreted the trial court's judgment to require his incarceration for fifty-eight and one-half years. Mauro requests that we reform the trial court's judgment to clarify the stacking order.

---

1. The trial court ordered that the sentences on count one and counts five through thirteen were to be served concurrently with his other sentences.

The State complains the trial court erred by requiring it to make an election regarding Mauro's punishment and subsequently by disregarding the jury's verdict on counts four and nineteen. The State argues that a conviction for the sexual assault of a child and a conviction arising from the improper relationship between a school employee and a student are separate offenses for double jeopardy purposes even if the conduct is identical. Also, the State argues that the statute proscribing sexual contact between students and employees of schools expressly allows multiple punishments. The State concludes that subjecting Mauro to multiple punishments for sexual assaults and for improper school employee relationships does not violate the Double Jeopardy Clause of the United States or Texas Constitutions.

### Sufficiency of Evidence— Standards of Review

With respect to the legal sufficiency of the evidence in a criminal case, we review all of the evidence in a light most favorable to the verdict, and we decide if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim.App.2006). In a factual sufficiency review, we consider all of the evidence in a neutral light and reverse only if we conclude, from some objective basis in the record, that the great weight and preponderance of evidence contradicts the jury's verdict. *Watson v. State,* 204 S.W.3d 404, 414, 417 (Tex.Crim.App.2006). We cannot determine that a finding is "clearly wrong" or "manifestly unjust" simply because we might have found otherwise had we been

the fact finder. *Id.* at 417. In examining a factual sufficiency challenge, we defer to the fact finder's determination of the credibility of the evidence. *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex.Crim.App. 2003).

### Analysis of Mauro's Sufficiency Arguments

■ In issue one, Mauro challenges the sufficiency of the evidence to support his conviction on count two of the indictment. In count two of the indictment[2], the State charged Mauro with indecency with a child by exposure, a violation of section 21.11(a) of the Penal Code. In pertinent part, this statute provides:

(a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

(B) causes the child to expose the child's anus or any part of the child's genitals.

Tex. Pen.Code Ann. § 21.11(a) (Vernon 2003).

In this case, the evidence showed that the female victim and her boyfriend came to Mauro's office to get a pass for skipping class. While in his office, Mauro provided

---

**2.** Count 2 of the indictment alleges that Mauro, "on or about *November 01, 2004* in Montgomery County ... did then and there, with the intent to arouse or gratify the sexual de-

sire of the Defendant, intentionally or knowingly cause [the female victim], a child younger than 17 years and not the Defendant's spouse, to expose her genitals."

the victim's boyfriend with a vibrator and explained to him how it worked. Then, Mauro undid the victim's belt and pants so that her boyfriend could use the vibrator on her genitals. Subsequently, Mauro told the victim to use the vibrator on herself, and she complied. Both the boyfriend and the victim testified that the vibrator contacted the victim's genitals. Nevertheless, they both testified that no one ever saw the victim's genitals.

Mauro's factual and legal sufficiency arguments depend upon whether the statute's use of the term "expose" requires proof that the victim's genitals were exposed to another's eyesight. In support of his argument, Mauro cites two cases, *Beasley v. State*, 906 S.W.2d 270 (Tex. App.-Beaumont 1995, no pet.) and *McGee v. State*, 804 S.W.2d 546 (Tex.App.-Houston [14th Dist.] 1991, no pet.). *Beasley* and *McGee* address Penal Code section 21.08, a statute prohibiting an individual's indecent exposure of his genitals. *See Beasley*, 906 S.W.2d at 271; *McGee*, 804 S.W.2d at 547; Tex. Pen.Code Ann. § 21.08 (Vernon 2003). With its Chief Justice dissenting, the *Beasley* Court reversed the defendant's indecent exposure conviction because "there was no exposure within the meaning of the statute" when the defendant held his hand over his genitals and blocked the victim's view. *Beasley*, 906 S.W.2d at 272. In reversing Beasley's conviction, this Court relied on *McGee*, which affirmed a conviction for indecent exposure. *Id.* The McGee Court noted that the defendant's genitals were "open to view." *McGee*, 804 S.W.2d at 547.

Here, the State contends that section 21.11of the Texas Penal Code does not require proof of exposure to one's eyesight. The State relies on *Miller v. State*, 156 Tex.Crim. 389, 243 S.W.2d 175 (Tex. Crim.App.1951), in which the Court of Criminal Appeals stated that the meaning of "expose" need not be limited to "exposed to sight." [3] 243 S.W.2d at 176. *Breckenridge v. State*, 40 S.W.3d 118 (Tex. App.-San Antonio 2000, pet. ref'd) also supports the State's argument. The *Breckenridge* Court explained:

> Whether or not the witnesses could actually see the genitals due to the defendant's pubic hair or due to a failure to inspect closely enough is not relevant to proving exposure. Conviction for exposure does not require the victim or witness to actually see the genitals, *[s]ee Uribe v. State*, 7 S.W.3d 294, 297 (Tex. App.-Austin 1999, pet. ref'd); the crime is exposing, unmasking, or uncovering the genitals. *See Balfour v. State*, 993 S.W.2d 765, 769 (Tex.App.-Austin 1999, pet. [ref'd] ). The charges in this case concern not what the victims saw, but what the defendant exposed. The defendant was able to argue the theory that only pubic hair was exposed, and the jury rejected the theory.

40 S.W.3d at 124–25.

Resolving the question before us thus depends on the statutory meaning of the term "expose." The Penal Code does not define "expose." Thus, we must construe the term as required by the rules of statutory construction. Tex. Pen.Code Ann. § 1.05(b) (Vernon 2003). Unless the con-

---

**3.** In *Miller*, the Court discussed article 535c, the provision in effect at that time, which penalized indecent exposure to minors. *Miller v. State*, 156 Tex.Crim. 389, 243 S.W.2d 175, 175 (Tex.Crim.App.1951). The statute provided, in pertinent part, that: "It shall be unlawful for any person with lascivious intent to knowingly and intentionally expose his or her private parts or genital organs to any other person, male or female, under the age of sixteen (16) years." Act of February 27, 1950, 51st Leg., 1st C.S., ch. 9, § 1, 1950 Tex. Gen. Laws 50.

text of a term's use requires a different construction, we interpret the legislature's intent pursuant to certain provisions of the Code Construction Act, including section 311.011. *Id.* This provision states: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005).

Dictionaries determine a word's common use. "Expose" means:

> 1 a: to lay open (as to attack, danger, trial, or test): make accessible to something that may prove detrimental : deprive of shelter, protection, or care <~ him to the weather> <~ troops needlessly> <a coast *exposed* to severe gales> b : to submit or subject to an action or influence <~children to good books> ... c: to abandon (an infant) esp. by leaving in the open ... 2: to lay open to view: lay bare: make known: set forth: EXHIBIT, DISPLAY <~*exposing* a sun-tanned back>.
>
> . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 802 (2002).

In this case, the evidence showed that Mauro caused the victim's genitals to be exposed to a vibrator. Mauro did so by providing the vibrator, encouraging its use, and by loosening the victim's pants so that her genitals became accessible without being seen. Mauro watched while the boyfriend, and then the victim, used the vibrator on the victim's genitals. Although Mauro never saw the victim's genitals, his conduct exposed them by making them accessible. The conduct described by the witnesses is sufficient, in our opinion, to fall within the conduct the legislature intended to prohibit in section 21.11. *See* Tex. Pen.Code Ann. § 21.11.

*McGee* and *Beasley* are distinguishable. *McGee* does not involve the statute we consider here and does not require proof that the victim viewed the defendant's genitals. 804 S.W.2d at 547. Rather, *McGee* construes section 21.08 of the Penal Code and holds that evidence showing that the victim saw the defendant's genitals is sufficient to support a conviction. *Id.; see* Tex. Pen.Code Ann. § 21.08(a) (Vernon 2003).

*Beasley* also is distinguishable from the facts before us. First, *Beasley,* like *McGee,* construed the indecent exposure statute, section 21.08, and not section 21.11, which concerns indecency with a child. *See* Tex. Pen.Code Ann. §§ 21.08, 21.11; *Beasley,* 906 S.W.2d at 271. Second, a person commits an offense under section 21.08 by exposing *his* genitals. Under section 21.11, however, a person commits an offense by exposing his genitals *or causing the child to expose hers.* Thus, section 21.11 prohibits acts not covered under section 21.08. Third, the facts of *Beasley* are distinguishable: the victim's genitals in *Beasley* were not exposed to direct contact, as exists here. *See* 906 S.W.2d at 271–72. Because *Beasley* is factually distinguishable and was decided under section 21.08 rather than section 21.11, we need not revisit whether *Beasley* was correctly decided. Nevertheless, we do not interpret *Beasley* as holding that a visual sighting must always be proven to establish a violation of section 21.08 of the Penal Code.

By applying the rules of statutory construction and considering *Miller's* interpretation of "expose" under the prior statute, we conclude that the evidence in this record is legally and factually sufficient to support Mauro's conviction on count two. Viewing the record in the light most favorable to the verdict, we find that a rational jury could have concluded beyond a reasonable doubt that Mauro caused the female victim to expose her genitals to direct contact with the vibrator to gratify his

sexual desire. As a result, the evidence is legally sufficient to support the jury's guilty verdict on count two. In addition, a neutral review of the entire record does not show that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, nor does it show that the proof of Mauro's guilt is greatly outweighed by contrary proof. We hold that the evidence is factually sufficient to support the verdict. We overrule issue one.

## Double Jeopardy

The State and Mauro both raise double jeopardy issues for our review. Mauro does not challenge the State's right to appeal.

In issues one and two, the State contends that the trial court erred when it decided not to punish Mauro on counts four and nineteen. The State also argues that the prohibition against double jeopardy does not negate a clearly-expressed legislative intent to impose multiple punishments for the same conduct.

Mauro's complaints concern the procedure followed by the trial court in its remedy of his double jeopardy complaint. In issue two, Mauro complains about the trial court's procedure for deciding which of his convictions to disregard. In issue three, Mauro asserts the trial court erred by electing to base his punishment on counts three (ten years) and eighteen (fourteen years and six months), rather than counts four (twenty years) and nineteen (twenty years).

The jury convicted Mauro in count four of the indictment for engaging in an improper relationship with a female student; the trial court disregarded this finding, electing to base his punishment on count three, a conviction for sexual assault of a child. The jury convicted Mauro in count nineteen for engaging in an improper rela-

tionship with a separate female student; the trial court disregarded this finding, electing to base his punishment on count eighteen, a conviction for sexual assault of a child. The trial court concluded that punishing Mauro under these circumstances for crimes of engaging in an improper relationship and for crimes of sexual assault violated the Double Jeopardy Clause when the convictions for the separate offenses stemmed from conduct with the same child.

Because it accepted Mauro's double jeopardy argument, the trial court's remedy was to disregard Mauro's convictions on counts four and nineteen. The trial court did not pronounce sentence on counts four and nineteen. The trial court entered judgments of conviction against Mauro and sentenced him on all other counts.

### Analysis of State's Double Jeopardy Issues

■■■ The Fifth Amendment of the Constitution of the United States, commonly called the Double Jeopardy Clause, provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In a similar provision, the Texas Constitution provides: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. 1, § 14. Among other things, these clauses generally protect a person against multiple punishments for the "same" offense. *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex.Crim.App.2006). Whether an offense is the "same" for double jeopardy purposes is determined by evaluating whether each provision requires proof of a fact that the other does not. *Blockburger v. United States*, 284 U.S. 299,

304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim.App.1994). Thus, we compare the proof required to show a violation of Penal Code section 22.011 with that required under section 21.12, the two statutes at issue in this case. The sexual assault statute found at section 22.011 provides, in pertinent part:

(a) A person commits an offense if the person:

(1)....

(2) intentionally or knowingly:

(A) causes the penetration of the anus or sexual organ of a child by any means;

(B) causes the penetration of the mouth of a child by the sexual organ of the actor;

(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

Tex. Pen.Code Ann. § 22.011(a) (Vernon Supp.2006).[4]

The statute that prohibits sexual contact between students and employees of schools is section 21.12 of the Penal Code. It provides:

(a) An employee of a public or private primary or secondary school commits an offense if the employee engages in sexual contact, sexual inter-

course, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works and who is not the employee's spouse.

(b) An offense under this section is a felony of the second degree.

(c) *If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or both sections.*

Tex. Pen.Code Ann. § 21.12 (Vernon Supp. 2006) (emphasis added).

■ "Legislatures, not courts, prescribe the scope of punishments." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Because the Double Jeopardy Clause does not prohibit a legislature from authorizing cumulative punishments under two statutes that proscribe the same conduct, the question before us is whether the legislature intended to impose multiple punishments for violating these two provisions. *See* 459 U.S. at 368–69, 103 S.Ct. 673. If so, the imposition of multiple sentences does not violate the Constitution. *Id.* at 367–68, 103 S.Ct. 673 (citing *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). Therefore, we must first determine whether the language of section 22.12(c) expresses legislative intent to authorize multiple punishments for school employees who engage in the prohibited conduct. *See Langs v. State*, 183 S.W.3d 680, 685 (Tex.Crim.App.2006) (stating that "same elements" test applies "when the legislature's intent is not clearly expressed").

---

4. Although the legislature amended the sexual assault statute after the commission of the offense, there were no changes in the statute that are pertinent to this appeal. Therefore, we cite the current version.

In *Hunter*, the United States Supreme Court evaluated a Missouri statute that penalized the use of guns. 459 U.S. at 361, 103 S.Ct. 673. Hunter challenged whether he could be punished under a statute that prohibited robbery and also be punished under a statute that prohibited armed criminal actions. *Id.* at 362, 103 S.Ct. 673. The Hunter Court explained that the Missouri statute contained the following language: "The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon." *Id.* The Supreme Court held that Hunter's punishment under both statutes was constitutionally permissible despite his double jeopardy claim. The Supreme Court reasoned that the Missouri legislature "specifically authorize[d] cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct...." *Id.* at 368, 103 S.Ct. 673.

Section 21.12(c) of the Texas Penal Code is not identical to the language used by the Missouri legislature, which authorized multiple punishments. *Id.* at 362, 103 S.Ct. 673. Instead, section 21.12(c) expressly allows prosecutions to occur under both section 22.011(a) and section 21.12(c). *See* Tex. Pen.Code Ann. §§ 21.12(c), 22.011(a). Our statutory construction rules require that we construe these statutes to effect the legislature's objectives. Tex. Pen.Code Ann. § 1.05(a) (Vernon 2003). Unless the statute's context requires a different construction, we must presume that the legislature intended the entire statute to be effective. Tex. Pen. Code Ann. § 1.05(b); Tex. Gov't Code Ann. § 311.021(2) (Vernon 2005).

In contrast to Texas statutes that allow multiple prosecutions, our legislature has also enacted another statute that allows prosecution under one of two statutes, but not both. *See* Tex. Hum. Res.Code Ann. § 32.0391(c) (Vernon Supp.2006) (providing that conduct constituting an offense under this section as well as other statutes "may be prosecuted under either this section or the other provision"). When it chose to do so, the legislature created a statute that allows a defendant's prosecution under only one of several potentially applicable statutes.

■ Further, if a statute's plain language is unambiguous, we construe a statute according to its plain meaning, unless doing so leads "to absurd consequences that the Legislature could not have *possibly* intended...." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991) (en banc). In this context, it appears unlikely that the legislature would allow multiple prosecutions but allow only one punishment. Allowing only one punishment would not further the legislature's goal to punish and deter the type of conduct proscribed by section 21.12 of the Penal Code. *See* Tex. Pen.Code Ann. § 21.12. Instead, the legislature's goal of punishing the school employee's breach of trust would be largely redundant if the same conduct was usually, if not always, sufficient to support a conviction under Texas's exposure or assault statutes.

Because statutory construction rules require that we construe a provision to render the entire statute effective, we conclude that by expressly allowing prosecution under both statutes, the legislature intended to allow the State to exact multiple punishments. Our conclusion regarding the legislative intent in enacting this statute's "both sections" provision finds support in *Ex parte Pool*, 71 S.W.3d 462 (Tex.App.-Tyler 2002, no pet.). In denying Pool's writ of habeas corpus, the Tyler Court of Appeals relied upon a similar "both sections" provision

to conclude that the Double Jeopardy Clause did not bar Pool's prosecution for burglary because he had been previously convicted for violating a protective order. *Id.* at 468–69. The protective order, issued prior to the burglary, provided that Pool was not to go to or near the residence of his wife except under certain agreed conditions. *Id.* at 464. After the issuance of the protective order, Pool broke into the residence and battered his wife. *Id.* The State charged Pool with violating the protective order and burglary. *Id.* Pool pled guilty to violating the protective order and then argued that the Double Jeopardy Clause barred his prosecution for the burglary. *Id.* at 464–65. The Tyler Court of Appeals held that Pool's double jeopardy claim failed, even though the charges arose out of the same conduct. *Id.* at 468. In reaching its conclusion, the court relied in part on the "both sections" provision in the protective order statute. *Id.; see* Tex. Pen.Code Ann. § 25.07(c) (Vernon Supp.2006).

Likewise, the Supreme Court in *Hunter* rejected the appellant's double jeopardy argument even though that statute subjected him to multiple punishments. 459 U.S. at 368–69, 103 S.Ct. 673. Implicit in the Court's reasoning is a rejection of the proposition that the Double Jeopardy Clause prohibits multiple prosecutions when the statutory language authorizes multiple punishments but is silent on the question of multiple prosecutions.

■ We decline to hold that the legislature must make express that which is implicit: "both sections" provisions need not expressly state that they allow both multiple prosecutions and multiple punishments. By allowing multiple prosecutions, the legislature clearly intended to allow multiple punishments. When the legislature authorizes multiple punishments, even if the punishment is for the same conduct, the

Double Jeopardy Clause is no bar. As the United States Supreme Court explained:

> Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.

*Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

■ Even if the legislative intent of section 21.12(c) was unclear, we would reach the same result. When the legislative intent is not clear, the courts use the *Blockburger* "same elements" test "to determine if two convictions constitute 'multiple punishment' under the Double Jeopardy Clause[.]" *Langs,* 183 S.W.3d at 685 (citing *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). To determine whether there are two offenses, or only one, a court must decide " 'whether each provision requires proof of a fact which the other does not.' " *Langs,* 183 S.W.3d at 685 (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180). Thus, we look to the elements alleged in the indictments at issue. *Parrish,* 869 S.W.2d at 354 ("[T]he essential elements relevant to a jeopardy inquiry are those of the charging instrument, not of the penal statute itself.").

In Mauro's case, the indictments for the two offenses contain elements that are different. In the improper relationship charges, counts four and nineteen, the State alleged that when Mauro committed the offenses he was "an employee of a public secondary school, ..." and his victim was "a person who was enrolled" in school. These allegations are not found in the sexual assault charges, counts three and nineteen; proving sexual assault does not require the State to prove that the defendant was a school employee. In ad-

dition, the sexual assault counts allege that Mauro's victims were children. The improper relationship counts contain no similar allegation; section 21.12 of the Penal Code does not require proof that the victim is a child. *See* Tex. Pen.Code Ann. § 21.12. Because the offenses for the statutes at issue require proof of different elements, Mauro's offenses as alleged in the indictment are not considered the "same" for double jeopardy purposes. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180.

In conclusion, we sustain the State's issues one and two and remand the case to allow the trial court to assess punishment on counts four and nineteen in accord with our opinion and the Texas Code of Criminal Procedure. *See generally* Tex.Code Crim. Proc. Ann. arts. 42.03, 42.08 (Vernon 2006). We hold that neither the Double Jeopardy Clause of the U.S. Constitution nor that of the Texas Constitution prohibits Mauro's punishments under count four and count nineteen in addition to his punishments under count three and eighteen.

### Analysis of Mauro's Double Jeopardy Issues

■ In light of our resolution of the State's double jeopardy issues, we need not resolve Mauro's issues two and three regarding the procedure the trial court followed in deciding which of the counts to disregard. The result we reach allows the trial court to sentence Mauro on counts four and nineteen, the counts Mauro asserts the trial court should have sentenced him on, as well as counts three and eighteen. As a result, issues two and three are moot.

### TDCJ Sentence Calculation

■ In his fourth and fifth issues, Mauro complains that the trial court's cumulation order differs from the sentence it pronounced in open court. However, Mau-

ro's brief and argument reveal that his concern arises from the TDCJ's records, which he asserts reflect that "his cumulated judgments of conviction total 58.5 years confinement, as opposed to the 44 years confinement intended and ordered by the trial court, a difference of 14.5 years." The State responds that the TDCJ's records are not in the appellate record, and as a result, Mauro cannot demonstrate any error.

We have reviewed the sentencing hearing and the judgments entered by the trial court. The trial court's judgments conform to the sentences the court orally pronounced at the sentencing hearing and are not ambiguous. Both the sentencing hearing and the judgments reflect that the trial court exercised its discretion to stack Mauro's sentences, the effect of which is to incarcerate Mauro for forty-four years. To the extent Mauro complains that the judgments do not conform to the oral pronouncement of sentence, his issues are overruled.

■ In its brief, the State advises that it has "verified that TDCJ–ID miscalculated Applicant's serve-all date at 58.5 years and asked TDCJ–ID to correct its error." Mauro also complains in his brief of an alleged error by the TDCJ in calculating his sentence. However, the TDCJ's records are not part of the record on appeal. Further, "an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling." *Whitehead v. State,* 130 S.W.3d 866, 872 (Tex.Crim.App. 2004) (citation omitted). Appellate courts generally do not consider factual assertions outside the record.

Although we would have jurisdiction to correct an error made by a trial judge, the alleged error here is one made by the TDCJ, a party that is not before us in this appeal. However, even if we construed

Mauro's appeal as a request for a writ of mandamus to correct the TDCJ's allegedly erroneous calculations, our mandamus jurisdiction is governed by section 22.221 of the Texas Government Code. That section expressly limits the mandamus jurisdiction of the courts of appeals to writs against a district court judge or county court judge in the court of appeals' district and to all writs necessary to enforce the court of appeals' jurisdiction. Tex. Gov't Code Ann. § 22.221 (Vernon 2004). Thus, even if we had the TDCJ's records before us in a writ of mandamus, it is not apparent that we could correct the alleged error about which Mauro complains.

### Conclusion

In conclusion, we overrule Mauro's first through fifth issues. Except for the trial court's refusal to sentence Mauro on counts four and nineteen, we affirm the trial court's judgment. We sustain the State's issues regarding counts four and nineteen, and remand the case to allow the trial court to pronounce sentence and enter judgments on those two counts.

REVERSED AND REMANDED IN PART, AFFIRMED IN PART.