

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-17-00365-CR
No. 02-17-00366-CR

———————————————————

HOWARD LEWIS JONES A/K/A HOWARD LEWIS PATTERSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1509581R, 1509586R

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

In two issues, Appellant Howard Lewis Jones appeals his convictions for one count of injury to an elderly person with a deadly weapon and two counts of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a), 22.04(a). We hold that the evidence is sufficient and that Appellant has not shown that section 22.04(h) of the penal code is unconstitutional but that one judgment must be reformed to correct clerical errors. We affirm the trial court's judgments as reformed.

## Background

Appellant's convictions arise from a stabbing that took place on the night of January 3, 2017. Barbara Erickson and Henry Nelms were stabbed repeatedly in Nelms's apartment. Both Erickson and Nelms alleged that Appellant committed the stabbings. The following rendition of facts is a summary of testimony provided by Erickson, Nelms, and responding police officer Cody Slinkard.

Erickson, Nelms, and Appellant were acquaintances that lived in the same apartment complex in east Fort Worth. Erickson, who was 54 at the time of trial, testified that she was a close friend of Nelms and that Nelms had a reputation for helping people out and had helped Barbara out from time to time when she was homeless and needed a place to stay.

According to Erickson, she visited Nelms on the evening of January 3, and asked if she could stay at his apartment that night. Nelms said yes, so Erickson left to

get her purse from another apartment in the area. Erickson testified that as she was walking back to Nelms's apartment, she noticed that Appellant was also walking toward Nelms's apartment. Even though Erickson and Appellant had just ended their own brief relationship on bad terms, Erickson was not concerned that Appellant was going to Nelms's apartment because according to Erickson, Appellant often visited Nelms, sometimes to borrow money or purchase marijuana.

Erickson reached Nelms's house first, went inside, and told Nelms that Appellant was on his way there. Once Appellant arrived, he said, "I told you not . . ." and grabbed Erickson by the throat from behind. Erickson testified that it then felt like "he was slugging [her] in the back really hard." But soon she realized that she had been stabbed. As she related to the jury, "I reached around and I felt the wet [blood] and I could feel the air coming out my back." Erickson recalled that Nelms told Appellant that anything Erickson could have done was not worth stabbing her over. Then he grabbed Appellant and the two fought. Eventually, Appellant managed to pin Nelms to the floor.

Erickson recalled that Appellant forcibly took the phone from her when she tried to call 9-1-1. At some point Nelms asked Appellant if he'd go away if he gave Appellant some money. Erickson heard Appellant respond, "Yeah, give me the money."

Nelms, who was 75 at the time of trial, recalled a similar series of events. He testified that just prior to the stabbing on January 3, Erickson arrived at his apartment

3

first, followed shortly thereafter by Appellant. Erickson and Appellant sat down on the edge of Nelms's bed across from where Nelms was sitting in a chair. According to Nelms, Appellant said something to Erickson along the lines of, "I told you to quit telling people . . ." and then he heard Erickson say, "I can't breathe, I can't breathe." At that point, Nelms realized that Appellant had his hand on Erickson's neck and was stabbing her.

Nelms testified that he pulled Appellant off of Erickson, the two wrestled on the ground, and then Appellant stabbed Nelms. After Appellant stabbed Nelms several times, he hit Nelms on the head with Nelms's cane, told Nelms to shut up, and then took Nelms's wallet from his pocket.

Erickson and Nelms both recalled that at that point, someone tried to open Nelms's front door, which startled Appellant and he left. Erickson called 9-1-1.

When police arrived, they discovered Nelms and Erickson lying in pools of blood. Officer Slinkard testified that Erickson identified Appellant as the person who had stabbed them and directed them toward Appellant's apartment. The police then went to Appellant's apartment and when Appellant answered the door, Officer Slinkard noticed that Appellant was sweating, was not wearing a shirt, had blood on his chest, and was wearing what appeared to be a fresh pair of pants. Another officer noticed a bloody sock on the floor behind Appellant and when the officer questioned Appellant about it, Appellant slammed the door shut. Believing Appellant was in the process of destroying evidence, the officers decided to immediately enter the

4

apartment and once inside the apartment, they arrested Appellant. After police obtained a warrant, they searched Appellant's apartment where they discovered bloody clothing, bloody gloves, bloody shoes, an open bottle of bleach, a knife, and Nelms's wallet.

Erickson suffered stab wounds to her neck, back, abdomen, and chest and was hospitalized for four days after the incident to receive treatment for her wounds. Her spleen was removed because it so badly damaged. As to the lasting effects of the incident, Erickson testified: "I'm kind of scared of people now. I'm kind of scared to go out by myself without somebody with me. I don't like to ride the bus. I don't like to be around a lot of people."

Nelms likewise suffered serious injuries—he had a large gash on his forehead and stab wounds to his chest, abdomen, and lower back. He spent three days in the hospital and testified at trial, "I'm crippled now. I can't even walk straight. I was walking pretty good." He also testified, "[I]t changed my whole life. Like I said, I was getting around and walking around, getting around and everything until that happen[ed]. It kind of broke me down."

Appellant was charged with one count of injury to an elderly person (Nelms) with a deadly weapon and two counts of aggravated assault with a deadly weapon—one count related to his assault of Nelms and the other related to his assault of Erickson. *See* Tex. Penal Code Ann. §§ 22.02, 22.04(a)(1). Each count was enhanced by a habitual-offender notice. *See id.* § 12.42. The jury found Appellant guilty of all

5

three counts, found that Appellant had used a deadly weapon (a knife) to commit the crimes, found the habitual-offender allegation true, and assessed a 40-year sentence for each conviction.

## Discussion

Appellant brings two issues on appeal. In his first issue, he argues that the evidence is insufficient to support his conviction. In his second issue, Appellant argues that section 22.04(h) of the penal code, which allowed him to be convicted of both injury to Nelms as an elderly person and aggravated assault of Nelms, is facially unconstitutional because it violates the rules of double jeopardy.

## I. Sufficiency of the evidence

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). But when a record supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

7

To show that Appellant committed aggravated assault with a deadly weapon, the State was required to show that Appellant intentionally, knowingly, or recklessly caused serious bodily injury to another or used a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.02(a). In order to show that Appellant committed the offense of injury to an elderly person, the State was required to show that Appellant intentionally or knowingly caused serious bodily injury to a person over the age of 65. *Id.* § 22.04(a).

Appellant argues that the State did not meet these burdens because (1) Nelms could not identify Appellant in court; (2) no fingerprint or DNA evidence was presented linking Appellant to the stabbing or linking the knife found in his apartment to the stabbing; (3) there was insufficient evidence that Appellant intentionally or knowingly attacked Nelms and Erickson; and (4) there were discrepancies in the testimony of various witnesses, including Erickson's description of the clothes Appellant wore the night of the stabbing.

Appellant's arguments fail. Nelms did identify Appellant as the assailant at trial, albeit with some equivocation.[1] Erickson, however, unequivocally identified Appellant as their assailant.

---

[1]Q. Within those apartment complexes, have you ever met someone named Howard Jones?

[Nelms]. Yes, sir . . . .

Q. Do you see that person in the courtroom today?

DNA and fingerprint evidence are not required to show guilt; "the State may prove [a] defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Appellant's intent is reasonably inferred from the evidence that he stabbed both Nelms and Erickson. *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("Because 'one's acts are generally reliable circumstantial evidence of one's intent,' the jury could reasonably infer that [the defendant] intended to do exactly what he did—to inflict bodily injury on B.T.") (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.)). And finally, any discrepancies between the testimony and the evidence were for the jury to resolve. *Matson*, 819 S.W.2d at 846.

---

A. I don't see him yet.

Is that him there?

Q. I'm asking you.

A. If that him, he has gained weight.

Q. . . . if that's him, you just have to - - you know, if you can identify him, then you have to identify him.

A. Right. He gained weight then. I - - I - - I just know - - let me put my glasses on and see him.

Yeah. That look like him, yeah.

Q. That looks like him?

A. Yes, sir.

9

Appellant's arguments nitpick at the evidence, but the reality is that the following evidence was shown:

- Appellant stabbed both Nelms and Erickson repeatedly with a knife.

- Nelms was 74 at the time of the stabbing.

- When officers responded to the scene, Erickson identified Appellant as the assailant.

- Erickson and Nelms identified Appellant at trial as the assailant who had repeatedly stabbed them.

- Soon after the stabbing and after Appellant was named as the assailant, police observed Appellant at his apartment with blood on his chest.

- Thereafter, the police found bloody clothing, bloody gloves, bloody shoes, an open bottle of bleach, a knife, and Nelms's wallet inside Appellant's apartment.

- Erickson and Nelms suffered serious wounds that required multi-day hospital stays and had lasting effects.

Viewed in the light most favorable to the verdicts, this evidence is more than sufficient to support the jury's verdicts. We therefore overrule Appellant's first issue.

## II. Constitutionality of section 22.04(h)

Section 22.04 criminalizes the intentional, knowing, reckless, or criminally negligent act of causing injury to an elderly person. Tex. Penal Code Ann. § 22.04(a). Section 22.04(h) provides:

(h) A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections. Section 3.04 does not apply to criminal episodes prosecuted under both this section and another section of this code. If a criminal episode is prosecuted under both this section and another section of this

10

code and sentences are assessed for convictions under both sections, the sentences shall run concurrently.

*Id.* § 22.04(h). Appellant was charged with and convicted of causing serious bodily injury to Nelms, an elderly person, and the aggravated assault of Nelms. *Id.* §§ 22.04(a), 22.02.

Appellant argues that 22.04(h) is facially unconstitutional because it violates the Double Jeopardy Clause of the Fifth Amendment, which provides: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V.

As the U.S. Supreme Court has explained, the Double Jeopardy Clause "is cast explicitly in terms of being 'twice put in jeopardy.'" *Missouri v. Hunter*, 459 U.S. 359, 365, 103 S. Ct. 673, 678 (1983). Thus, while the Double Jeopardy Clause prohibits multiple trials for the same offense, it does not prohibit multiple punishments for the same offense if the legislature so intended. *Id.* at 679, 103 S. Ct. at 368. ("Legislatures, not courts, prescribe the scope of punishments.").

Here, Appellant complains not of being subjected to multiple trials but to cumulative punishment under two statutes that proscribe the same conduct. Where, as here, a legislature "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under

11

*Blockburger*[2]," and the prosecution in a single trial seeks to impose cumulative punishment under such statutes, the Double Jeopardy Clause does not bar a trial court or jury from imposing cumulative punishments. *Id.* at 675, 103 S. Ct. at 359–369 ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

For our analysis, the ultimate question is whether the legislature intended to allow for multiple punishments in this circumstance. *Langs v. State*, 183 S.W.3d 680, 688 (Tex. Crim. App. 2006). Here, legislative intent is clear in section 22.04(h). The legislature expressly provided for the prosecution of an offender who injures an elderly person under section 22.04 and under another section of the code, such as aggravated assault. *See* Tex. Penal Code Ann. §§ 22.02, 22.04(h). "[T]he Double Jeopardy Clause does not prohibit a legislature from authorizing cumulative punishments under two statutes that proscribe the same conduct[.]" *Mauro v. State*, 221 S.W.3d 896, 903 (Tex. App.—Beaumont 2007, no pet.). If the legislature has specifically authorized cumulative punishment under two statutes, regardless of whether those statutes proscribe the same offensive conduct, "a court's task of

---

[2]*See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

12

statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 368–69, 103 S. Ct. at 679; *see also Aekins v. State*, 447 S.W.3d 270, 277 (Tex. Crim. App. 2014) ("Sometimes two offenses that are the 'same' *may* both be punished; sometimes two 'different' offenses *may not* both be punished. It all depends on the legislature's intent.") (citing, among others, *Hunter*, 459 U.S. at 368, 103 S. Ct. at 679).

Because the legislature is permitted to expressly provide for prosecution of the same conduct as multiple offenses, *see Hunter*, 459 U.S. at 366, 103 S. Ct. at 678, and the legislature's intent to do so here is clear in section 22.04(h), the application of that section cannot violate double jeopardy concerns. Accordingly, we overrule Appellant's second issue.

## III. Clerical error

While reviewing the record, we noted a clerical error in the judgment for count two of the indictment for Appellant's aggravated assault against Nelms. Although the indictment and jury verdict clearly state that Appellant was charged and convicted of causing bodily injury to an elderly person (count one of the indictment) and aggravated assault (count two of the indictment), the judgment for count two incorrectly states that it is also for injury to an elderly person. The parties do not address this on appeal but we may sua sponte reform an incorrect judgment to properly reflect the jury's verdict. *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (explaining the power of the appellate courts to reform

incorrect judgments sua sponte to reflect the findings of the jury). Because the jury convicted Appellant under count two for the aggravated assault of Nelms, we delete the portion of the judgment for count two that provides, "INJURY TO A ELDERLY INDIVIDUAL – INTENTIONALLY AND KNOWINGLY CAUSE SERIOUS BODILY INJURY THAT IN THE MANNER OF ITS USE OR INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY" and reform the judgment to provide in its place, "Aggravated Assault with a deadly weapon." We further delete the portion of the judgment for count two that provides, "22.04(e) PC," and reform the judgment to provide in its place, "22.02(a)(2)." *See* Tex. Penal Code Ann. § 22.02(a)(2).

## Conclusion

Having overruled both of Appellant's issues and having reformed the judgment to correct clerical errors, we affirm the trial court's judgments as modified.


/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice


Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 21, 2019

14